# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-713V

| | |
|---|---|
| MARY ANN NGUYEN,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: July 13, 2023 |

*Sean Franks Greenwood*, The Greenwood Law Firm, Houston, TX, for Petitioner.

*Adam N. Muffett*, U.S. Department of Justice, Washington, DC, for respondent.

**FINDINGS OF FACT**[1]

On January 12, 2021, Mary Ann Nguyen ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received in her right shoulder on September 27, 2020.[3] Pet. at 1, ECF No. 1. The

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] The petition indicates two different dates of vaccination. In separate paragraphs, it notes that Petitioner received the flu vaccination at issue on August 27, 2020, and September 27, 2020. Pet. ¶¶ Preamble, 4. However, Petitioner's vaccination record, affidavit, and medical records consistently indicate she received the subject vaccination on September 27, 2020. Exs. 1-2, 7 at 7, 8 at 22. I therefore do not find this error to be material to Petitioner's claim and it does not require further discussion – and in any event the record preponderantly establishes that Petitioner received the subject flu vaccination on September 27, 2020.

case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons discussed below, I find the flu vaccine alleged as causal was more likely than not administered in Petitioner's right shoulder, as alleged.

### I.     Relevant Procedural History

Petitioner filed her petition and affidavit in support of her claim on January 12, 2021. ECF No. 1. On March 22, 2021, she filed her vaccination record from CVS pharmacy, medical records, and a status report indicating she was awaiting additional records. ECF Nos. 8-9. Petitioner filed some outstanding medical records and a statement of completion on June 7, 2021. ECF Nos. 10-11. Additional medical records were filed on February 2, 2022, along with a status report indicating another set of records would be forthcoming. *See* ECF Nos. 14, 16-17. The next day (February 3, 2022), Petitioner filed a medical record exhibit and a statement of completion. ECF Nos. 18-19.

During the time this case was still undergoing Pre-Assignment Review ("PAR"), I entered an order noting that Petitioner had failed to satisfy her burden to establish site of vaccination. ECF No. 21. I therefore ordered her to provide a vaccination administration record. *Id.* On August 31, 2022, Petitioner submitted a status report describing her unsuccessful efforts to obtain such a record from her pharmacy. ECF No. 24. Petitioner noted that in August 2022, she "received documentation from CVS stating that they do not have any additional records indicating into which arm CVS administered the shot." *Id.* at 2. She continued, "[w]ithout evidence from the provider, Petitioner will rely upon her sworn testimony and subsequent medical records" to establish site of vaccination. *Id.* The case was subsequently reassigned to SPU. ECF Nos. 25-26.

On April 24, 2023, Respondent filed a status report regarding his informal assessment of the claim. ECF No. 30. Respondent did not describe issues that would preclude this case from staying in SPU, but indicated that "Petitioner has been unable to provide records from CVS pharmacy showing in which arm her vaccine was administered." *Id.* at 2 (citing Ex. 2; ECF No. 24). Respondent also estimated this case would not undergo medical review until after a year of activation. *Id.*

I have determined that while this case awaits medical review, a factual ruling regarding the site of vaccination is required, and will assist in its ultimate disposition. Thus, the issue of the site of Petitioner's September 27, 2020 flu vaccination is now ripe for resolution.

## II.     Issue

At issue is whether Petitioner received the vaccination alleged as causal in her right arm. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination).

## III.     Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL

3

408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.  Finding of Fact

The following finding of fact is based on a complete review of the record, including the petition, all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following:

- Ex. 1 ¶ 2, Petitioner's affidavit, indicating she received a flu vaccine on September 27, 2020, in her right arm. Within 24 hours, the "sharp pain in [her] right shoulder increased to severe shoulder pain . . . ." *Id.* ¶ 4. By 48 hours post vaccination, she had difficulty sleeping on her right side and getting dressed. *Id.*

- Ex. 7 at 8, a record of Petitioner's October 8, 2020 visit to Dr. Poage for shoulder pain noting that she had "some right shoulder pain" present "ever since" she got "a flu shot in the right upper arm." *Id.* at 8, 11. Her musculoskeletal exam was positive for right shoulder pain and limited ROM. *Id.* at 12. Petitioner was diagnosed with adhesive capsulitis of the right shoulder. *Id.* at 8, 12; *see also* Ex. 8 at 7, 10-12.

- Ex. 8 at 17, a record of Petitioner's October 29, 2020 visit with Dr. Driscoll complaining of right shoulder pain that started "a few days after" her flu shot "about [one] month ago." Dr. Driscoll assessed Petitioner with acute pain of the right shoulder. *Id.* at 19.

- Ex. 10 at 42-43, an October 30, 2020 MRI record of Petitioner's right shoulder showed right shoulder bursitis.

- Ex. 5 at 9, a November 2, 2020 follow-up visit with Dr. Elenz regarding Petitioner's recent MRI. Dr. Elenz Petitioner had "vaccine injection-related right shoulder subacromial bursitis." *Id.* Dr. Elenz administered a cortisone injection to Petitioner's right shoulder and recommended PT. *Id.*

- Ex. 5 at 7, a December 17, 2020 follow-up visit with Dr. Elenz, noting that Petitioner's right shoulder symptoms were "symptomatic again." She received a second cortisone injection in her right shoulder and Dr. Elenz recommended continued PT.

- Ex. 9 at 7, a record from Petitioner's April 28, 2021 visit with Dr. Brotzman showed Petitioner complained of right shoulder pain and that in September 2020, "she noticed a gradual onset of right shoulder pain which she attributes to receiving a flu vaccine in the wrong part of her arm." Dr. Brotzman diagnosed Petitioner with "ongoing right shoulder bursitis from September 2020 through April 2021." *Id.* at 8.

- Ex. 9 at 10, a record from Petitioner's June 23, 2021 follow-up with Dr. Brotzman for issues including right shoulder pain. Exam of right shoulder showed improved ROM and mild discomfort with flexion at the right deltoid. *Id.* at 11.

- Ex. 10 at 34, an October 20, 2021 visit with Dr. Rawson noting Petitioner's right shoulder pain "began [one year] prior after an influenza vaccination in that arm." Dr. Rawson assessed Petitioner with adhesive capsulitis of the right shoulder, performed a brisement procedure of the right shoulder joint, and referred her to PT. *Id.* at 35, 51-57.

- Ex. 11 at 59, PT records from October 26, 2021, documenting that "after the flu shot in Sept[ember] 2020, [Petitioner] felt ongoing pain in [her] right shoulder." Therapeutic exercises and treatment were performed on Petitioner's right side during each session. *Id.* at 61-62; *see also id.* at 5-58 (Petitioner's PT treatment on the right side through December 2021).

- Ex. 10 at 29-30, a December 14, 2021 follow-up with Dr. Rawson for right shoulder pain consistent with adhesive capsulitis.

Based on the above evidence, it appears more likely than not that Petitioner's September 27, 2020 flu vaccine was administered in her right shoulder, as alleged. The

record of Petitioner's October 8, 2020 visit to Dr. Poage for right shoulder pain present ever since receiving a flu shot in her right arm (Ex. 7 at 8, 11-12), is particularly persuasive. This record is from only approximately 11 days post-vaccination, and is the most contemporaneous record other than the vaccine administration record itself that is silent as to site.

I acknowledge that the vaccine administration record *itself* does not memorialize the site of the administration of Petitioner's flu vaccine. Ex. 2 at 11. However, all other medical records and Petitioner's affidavit support a finding that the vaccine was administered in Petitioner's right arm. Moreover, in addition to Petitioner's self-reports to treaters and her own statements in her affidavit, Petitioner's medical records consistently document diagnostic testing, physical therapy exercises, and treatment of Petitioner's right shoulder.

### V.      Scheduling Order

**Respondent shall file, by no later than <u>Tuesday, September 12, 2023</u>**, a status report concerning how he intends to proceed, or how much additional time is needed for this case to undergo Respondent's medical review.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master